## PEOPLE v BURDO

1. ARREST—MISDEMEANORS—PRESENCE OF ARRESTING OFFICER—STATUTES.

   The arrest of a defendant for driving under the influence of intoxicating liquors, a misdemeanor, was statutorily illegal where the arresting officer did not observe the defendant driving the car; the statute allows a peace officer to make an arrest without a warrant for a misdemeanor only when the misdemeanor is committed in the presence of the officer (MCLA 764.15[a]).

2. ARREST—ILLEGAL ARREST—PROBABLE CAUSE—EXCLUSION OF EVIDENCE.

   The rule which excludes evidence obtained as a result of a constitutionally invalid arrest does not necessarily apply to the results of a breath analysis taken following an arrest which was statutorily illegal but not constitutionally invalid because probable cause for the arrest existed.

3. SEARCHES AND SEIZURES—ARREST—ILLEGAL ARREST—PROBABLE CAUSE—EXCLUSION OF EVIDENCE—ALTERNATIVE REMEDY.

   There is no mandate for formulation of a rule which would require suppression of evidence seized pursuant to an arrest which is statutorily illegal but supported constitutionally by probable cause to believe the crime had been committed; the function of discouraging police officers from making illegal arrests is adequately served by the fact that the officer can be held personally liable for damages in a civil action for false arrest.

4. SEARCHES AND SEIZURES—CONSENSUAL SEARCH—EVIDENCE—BREATH ANALYSIS—SUPPRESSION OF EVIDENCE.

   The results of a breath analysis were properly entered into evidence where the defendant was charged with driving under the influence of intoxicating liquors and the defendant had consented to the administration of the test; because a consen-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest §§ 26, 28.

[2–4] 5 Am Jur 2d, Arrest §§ 116, 117.

sual search is not dependent upon an arrest, the fact that the defendant had been arrested illegally does not require that the evidence be suppressed.

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 June 4, 1974, at Detroit. (Docket No. 17898.) Decided October 8, 1974.

Ronald A. Burdo was convicted in district court of driving under the influence of intoxicating liquor. Defendant appealed to the circuit court. Reversed. Plaintiff appeals by leave granted. Reversed, and judgment and sentence of district court reinstated.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Russel W. Schmidt,* City Attorney, for the people.

*Tinkham, MacDonald, Jahr & Steffen,* for defendant.

Before: BRONSON, P. J., and QUINN and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The factual basis of this appeal is not in dispute. On April 20, 1971, at approximately 12:15 a.m., defendant Burdo's automobile ran into the rear of the automobile operated by one Glen Tapis as that automobile was stopped for a red light at the intersection of Sims Street and Wayne Road in the City of Wayne. The police were summoned and about five minutes later a City of Wayne patrolman arrived to take the accident report. The officer observed defendant at the scene and asked him if he had been driving the vehicle to which the officer received an affir-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mative reply. The officer observed that defendant was unsteady on his feet, his speech was slurred and his breath smelled of intoxicants. After taking the accident report, the officer announced that defendant was under arrest for driving under the influence of intoxicating liquors.

Defendant was then taken to the police station, which was located some 150 feet from the scene of the accident. At the station defendant was given the statutorily required warning of his rights with respect to the taking of a Breathalyzer test, after which defendant indicated that he would take the Breathalyzer test. The test resulted in a reading of .24%.

Prior to trial in the district court defense counsel moved to suppress the Breathalyzer results on the ground that the officer's arrest of defendant for a misdemeanor not committed in his presence and without a warrant was illegal. Counsel argued that since the arrest was illegal the Breathalyzer results must be excluded. The motion was denied by the district court judge. At the trial Mr. Tapis identified defendant as the driver of the automobile that struck him. Both Tapis and the officer testified that defendant appeared to be intoxicated. The officer who administered the Breathalyzer test testified as to the results, over the objection of defense counsel. The jury thereafter returned a verdict of guilty of driving under the influence of an intoxicating liquor. Defendant's motion for a new trial was denied by the district court.

Defendant appealed to Wayne Circuit Court alleging error in the admission of the Breathalyzer results. The circuit court judge reversed defendant's conviction, concluding that the arrest was unlawful and that the evidence should have been suppressed. From that opinion and order of the circuit court, the people appeal on leave granted.

Defendant argued before the district court judge and the circuit court judge, and now argues before this Court, that since the arrest was illegal, the Breathalyzer test results must be suppressed because of the per se exclusionary rule. Plaintiff argues that a police officer may arrest for the misdemeanor of driving under the influence of intoxicating liquors, even in the absence of a warrant, where the officer has probable cause to believe that defendant was driving while under the influence of intoxicating liquors.

Defendant is clearly correct in his assertion that his arrest for the misdemeanor of driving under the influence of intoxicating liquors was illegal, where, as here, the arresting officer did not observe the defendant driving the automobile. The Michigan Legislature has clearly ordained that a peace officer may arrest without a warrant for a misdemeanor only when the misdemeanor is committed in his presence. MCLA 764.15(a); MSA 28.874(a). Since the offense charged herein was not committed in the presence of the officer, the officer's arrest exceeded his statutory power to arrest and was thus unlawful.

While granting that defendant's arrest was unlawful in that it exceeded the officer's statutory power to arrest, it does not necessarily follow, as defendant argues, that the per se exclusionary rule mandates that the results of the subsequent Breathalyzer test be suppressed. The per se exclusionary rule as enunciated by the United States Supreme Court in *Weeks v United States,* 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914), and made applicable to the states in *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), arose out of and applies to constitutionally invalid arrests. Constitutionally valid arrests are dependent upon

whether probable cause exists at the moment the arrest was made by the officer. Since defendant herein never argued nor asserted that the officer did not have probable cause to arrest him, and the facts clearly support a finding that probable cause did exist, defendant's arrest was not constitutionally invalid,[1] but rather merely statutorily illegal; therefore the per se exclusionary rule is not applicable. See *State v Eubanks,* 283 NC 556; 196 SE2d 706 (1973).

Defendant's arrest not being invalid in the constitutional sense and therefore not subject to the constitutionally mandated per se exclusionary rule, the question thus becomes whether this State, as a matter of its own public policy, should fashion a similar exclusionary rule with respect to statutorily illegal arrests. We have not found any Michigan precedent which would mandate such a rule, nor do we find that such a rule is necessary to protect the basic rights of one illegally arrested as was defendant herein.[2] Where, as here, the officer had probable cause to believe that the crime had been committed, and therefore had the constitutionally required basis to search and seize, there would appear to be no need to suppress such evidence, even though the arrest was statutorily illegal. Further, to the extent that an exclusionary rule must be required to discourage police officers from making statutorily illegal arrests, that func-

[1] *Street v Surdyka,* 492 F2d 368 (CA 4, 1974).

[2] We are aware of the dissenting opinion in *People v Robinson,* 388 Mich 630; 202 NW2d 288 (1972), which appears to indicate that the constitutionally mandated exclusionary rule is applicable to statutorily illegal arrests; however, we would note that the dissent appears to arrive at that conclusion on the erroneous assumption that an illegal arrest automatically falls under the constitutionally mandated exclusionary rule. Thus, it cannot be said that the dissent in *Robinson* constitutes an expression by even those joining in the dissent that such a rule should be implemented as a matter of this State's public policy.

tion is adequately served by the fact that the officer can be held personally liable for damages in a civil action for false arrest.

Defendant's assertion that the Breathalyzer test results must be suppressed because of the illegal arrest is, in fact, inapposite, since the test was given only after defendant had been informed that he need not take the test and nevertheless consented to take it.[3] The test results therefore did not flow from the illegal arrest, but rather flowed from defendant's own consent. Since a consensual search is not dependent upon an arrest, be it legal or illegal, the fact that there was an illegal arrest would only be germane to the extent that it might vitiate the voluntariness of the consent, a question not raised by defendant. The test being consensual, the results were properly entered into evidence.

The order of the circuit court is reversed and the judgment and sentence of the district court is reinstated.

All concurred.

---

[3] Defendant at no time asserted or argued that his consent was coerced either by the illegal arrest or the statutorily mandated warnings with respect to the effect of his refusal to take the test vis-a-vis administrative revocation of his license. We therefore do not decide whether in appropriate circumstances an illegal arrest or the statutory warnings, alone or synergistically, could operate to coerce consent and thereby vitiate its operative effect.