PEOPLE v WOOD

Docket No. 99391. Argued May 4, 1995 (Calendar No. 15). Decided
     August 22, 1995.

   Andrew R. Wood was charged in the Livingston Circuit Court
     with possession of marijuana with the intent to deliver, opera-
     tion of a motor vehicle while under the influence of liquor, and
     operation of a motor vehicle in violation of the terms of a
     restricted license. The court, Stanley J. Latreille, J., granted
     the defendant's motion to suppress the evidence of the mari-
     juana and of blood-alcohol and field-sobriety tests, ruling that
     the evidence was the product of an unlawful arrest because the
     police did not see him committing a misdemeanor by operating
     the van under the influence of intoxicating liquor. The Court of
     Appeals, TAYLOR, P.J., and WEAVER and M. R. SMOLENSKI, JJ.,
     affirmed in an unpublished opinion per curiam (Docket No.
     165079). The people appeal.

        In an opinion by Justice LEVIN, joined by Chief Justice
     BRICKLEY, and Justices CAVANAGH and MALLETT, the Supreme
     Court held:

        Once a person using a motor vehicle as a motor vehicle has
     put the vehicle in motion, or in a position posing a significant
     risk of causing a collision, the person continues to operate the
     vehicle until it is returned to a position posing no such risk.

        1. A police officer may make an arrest for a misdemeanor
     without a warrant when the crime is committed in the officer's
     presence. Because the police arrested the defendant for OUIL,
     the legality of the arrest depends on whether he was operating
     a vehicle when the police found him. Under MCL 257.36; MSA
     9.1836, an "operator" is anyone in actual physical control of a
     motor vehicle on a highway. No particular state of mind is
     required to operate a motor vehicle. "Operating" should be
     defined in terms of the danger the OUIL statute seeks to
     prevent: the collision of a vehicle being operated by a person
     under the influence of intoxicating liquor with other persons or
     property. Once a person using a motor vehicle as a motor
     vehicle has put the vehicle in motion, or in a position posing a
     significant risk of causing a collision, the person continues to
     operate it until the vehicle is returned to a position posing no
     such risk.

        2. In this case, the defendant had put the vehicle in motion

and in a position posing a significant risk of collision, and the vehicle had not been returned to a position of safety. Only the defendant's foot resting on the brake pedal kept the vehicle from moving forward. Were the defendant, who had then become unconscious, to have slipped to the side, his foot might have moved off the brake, putting the vehicle in motion. He had not returned the vehicle to a position posing no risk of collision with other persons or property. Thus, he continued to operate the vehicle when he was observed by the officers. The circuit judge erred in suppressing evidence seized following the defendant's OUIL arrest.

Justice BOYLE, joined by Justice RILEY, concurring, stated that this decision effectively overrules *People v Fulcher (On Rehearing)*, 419 Mich 441; 355 NW2d 98 (1984). While prevention of imminent collisions, one purpose of the OUIL statute, is more than sufficient to explain why this defendant was operating his vehicle in the officer's presence, it is clearly not the only purpose of the statute. The statute is a prophylactic measure intended to prevent persons with impaired coordination, judgment, or sensation from being at the wheel of a car, regardless of the immediate risk of collision. Even when there is no immediate risk of collision, an intoxicated driver's loss of consciousness does not render the driver in compliance with the statute. Loss of consciousness is not a defense to drunk driving. An unconscious person behind the wheel of a vehicle is operating the vehicle within the meaning of the statute if that person would be considered to be operating the vehicle if awake.

Even if the defendant were not technically operating his vehicle in the presence of the officer, he would not be entitled to suppression of the evidence. The defendant's arrest does not implicate the Fourth Amendment exclusionary rule because there appears to be much more than probable cause to believe that defendant operated his vehicle while intoxicated. Whether suppression is appropriate is a question of statutory interpretation and legislative intent. The legislative history of MCL 764.15; MSA 28.874 does not suggest an intent to exclude evidence.

Suppression is particularly inappropriate on the facts of the present case. The officer, who could not be expected to master the intricacies of Michigan appellate case law, could have reasonably believed that a misdemeanor was being committed in her presence. Threats to suppress evidence cannot be expected to deter reasonable police conduct. In cases where suppression serves no purpose, it is far too extreme a remedy.

Reversed and remanded for trial.

Justice WEAVER took no part in the decision of this case.

*People v Pomeroy (On Rehearing)*, 419 Mich 441; 355 NW2d 98 (1984) overruled.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *David L. Morse,* Prosecuting Attorney, and *Daniel W. Rose,* Senior Trial Attorney, for the people.

*David M. Hartsook* for the defendant.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Donald Martin,* President, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for the Prosecuting Attorneys Association of Michigan.

LEVIN, J. The question presented is whether Andrew Russell Wood was "operat[ing] a [motor] vehicle," within the meaning of the OUIL statute, in the presence of the arresting officers.[1] We hold that he was, and that the circuit judge erred in suppressing evidence seized following his OUIL arrest on the basis that it was obtained as a result of an illegal search in this prosecution for possession

---

[1] A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if either of the following applies:

(a) The person is under the influence of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance.

(b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine. [MCL 257.625(1); MSA 9.2325(1).]

of marijuana with intent to deliver[2] and operation
of a motor vehicle under the influence of liquor.[3]
The Court of Appeals affirmed.[4] We reverse and
remand for trial.

I

On the night of June 15, 1992, police officers
found Wood unconscious in his van at a McDon-
ald's drive-through window in Howell. Wood was
slumped forward, with his head resting on the
steering wheel. The vehicle's engine was running,
and the automatic transmission was in drive.
Wood's foot, which rested on the brake pedal, kept
the vehicle from moving. Wood had a twenty-
dollar bill in his hand, and a Budweiser beer
between his legs. He smelled of alcohol and, when
the police awakened him, appeared confused.
Wood was arrested, and the police searched the
front seat of the vehicle. They found a cooler
containing baggies of marijuana, money, a list of
names, and a calculator.

Wood moved to suppress the evidence of the
marijuana and of blood-alcohol and field-sobriety
tests. The judge granted the motion, ruling that
the evidence was the product of an unlawful ar-
rest. The judge reasoned that the police were not
justified in arresting Wood because they did not
see him committing a misdemeanor by "operating"
the vehicle under the influence of intoxicating
liquor.[5] The judge relied on this Court's decision in

[2] MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c).

[3] MCL 257.625(1); MSA 9.2325(1). Wood was also charged with
operating a motor vehicle in violation of the terms of a restricted
license. MCL 257.312; MSA 9.2012.

[4] Unpublished opinion per curiam, issued March 31, 1994 (Docket
No. 165079).

[5] The judge also ruled that the circumstances had not constituted
an "accident," for which the police could arrest Wood for OUIL
without a warrant. MCL 764.15(1)(h); MSA 28.874(1)(h).

*People v Pomeroy (On Rehearing)* and *People v Fulcher (On Rehearing)*, 419 Mich 441; 355 NW2d 98 (1984).

## II

A police officer may make an arrest for a misdemeanor without a warrant when the crime is committed in the officer's presence.[6] Because the police arrested Wood for OUIL, the legality of the arrest depends on whether Wood was "operat[ing] a vehicle" when the police found him. We conclude that he was.[7]

A statute provides that an "operator" is anyone "in actual physical control of a motor vehicle upon a highway."[8] This Court addressed the definition of "operate" in *Pomeroy* and the companion case, *Fulcher*. We there said that a conscious person in a stationary vehicle might have "actual physical control," and thus operate it.[9] We suggested that no particular state of mind is required to operate a motor vehicle. We also said that a person who is sleeping in a moving vehicle might be found to "operate" it.[10]

---

[6] MCL 764.15(1)(a); MSA 28.874(1)(a). An officer may also, without a warrant, arrest a person who has committed a felony outside the officer's presence. MCL 764.15(1)(b); MSA 28.874(1)(b). In the absence of prior OUIL convictions, OUIL is a misdemeanor. MCL 257.625(6)(a); MSA 9.2325(6)(a). An officer may arrest the driver of a vehicle involved in an accident if the officer has reasonable cause to believe that the driver was intoxicated. MCL 764.15(1)(h); MSA 28.874(1)(h).

See also *People v Keskimaki*, 446 Mich 240; 521 NW2d 241 (1994), in which the police found the driver slumped over the wheel of his vehicle while parked on the shoulder of the roadway with the headlights on and the engine running. This Court ruled that an "accident" had not occurred within the meaning of MCL 257.625a(9); MSA 9.2325(1)(9), providing for the use of the results of chemical analysis under certain circumstances.

[7] This issue is distinct from the question whether there was sufficient evidence to convict Wood of OUIL.

[8] MCL 257.36; MSA 9.1836.

[9] *Id.*, p 446.

[10] *Id.*

But the combination of a stationary vehicle and an unconscious driver in *Pomeroy/Fulcher* persuaded the Court that the defendants there were not operating their vehicles when found by the police.

In *Pomeroy*, the defendant was found asleep in a parked vehicle outside a bar. The engine was running, but the manual transmission was in neutral. Pomeroy testified that he had only entered the vehicle to sleep, and had turned on the engine and heater because he was cold.[11] No other evidence was offered that Pomeroy had driven while intoxicated.

In *Fulcher*, police found Fulcher's automobile with its rear end in a ditch and the front end in the roadway. Fulcher was asleep in the driver's seat with the engine idling. Fulcher's foot was off the accelerator, but the automatic transmission was in drive. The vehicle was motionless. It had furrowed tire tracks into the ground.[12] In both *Pomeroy* and *Fulcher*, this Court found that the driver was not operating a motor vehicle at the time of arrest.[13]

III

We conclude that "operating" should be defined in terms of the danger the OUIL statute seeks to prevent: the collision of a vehicle being operated by a person under the influence of intoxicating liquor with other persons or property. Once a

---

[11] *Id.*, pp 444-445.

[12] *Id.*, p 445.

[13] *Id.*, p 447. This Court noted there was no evidence that Pomeroy had driven earlier while intoxicated. In *Fulcher*, the Court recognized the significant circumstantial evidence of earlier driving by Fulcher. The majority nevertheless reversed the conviction because the trial judge, sitting as trier of fact, had expressly rested his finding that Fulcher was guilty on the facts at the time of Fulcher's arrest. *Id.*

person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk.

The *Pomeroy/Fulcher* Court stated that "a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping."[14] We read that statement as reflecting an assumption that there was no danger of collision in such a case. The facts of this case show that this assumption was an overgeneralization. *Pomeroy/Fulcher* is overruled to the extent it holds, for purposes of construing what conduct is within the meaning of "operate a vehicle," that "a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping."[15]

IV

Wood had put the vehicle in motion and in a position posing a significant risk of collision. The vehicle had not been returned to a position of safety. Only Wood's foot resting on the brake pedal kept the vehicle from moving forward. Were Wood, who had then become unconscious, to have slipped to the side, his foot might have moved off the brake, putting the vehicle in motion. Wood had not returned the vehicle to a position posing no risk of collision with other persons or property. We conclude that he continued to operate the vehicle when he was observed by the officers.

Reversed and remanded for trial.

BRICKLEY, C.J., and CAVANAGH and MALLETT, JJ., concurred with LEVIN, J.

[14] *Id.*, p 444.
[15] *Id.*

Boyle, J. (*concurring*). I join the opinion of the Court on the understanding that our decision today marks the complete demise of *People v Fulcher (On Rehearing),* 419 Mich 441; 355 NW2d 98 (1984). I write separately first to state the basis for that observation and, second, to observe that even if the defendant were not technically "operating" his vehicle in the presence of the officer, he would not be entitled to suppression of the evidence.

I

The majority states that the ouil statute "seeks to prevent . . . the collision of a vehicle being operated by a person under the influence of intoxicating liquor with other persons or property." *Ante* at 404. While prevention of imminent collisions, one purpose of the statute, is more than sufficient to explain why this defendant was "operating" in the officer's presence, it is clearly not the only purpose of the ouil statute. That statute is a prophylactic measure intended to prevent persons with impaired coordination, judgment, or sensation from being at the wheel of a car, regardless of the immediate risk of collision.

Even when there is no immediate risk of collision, an intoxicated driver's loss of consciousness does not render him in compliance with the ouil statute. Loss of consciousness is not a defense to drunk driving; it is symptomatic of the very worst offenders. For that reason, it would be fair to say that an unconscious person behind the wheel of a vehicle is "operating" the vehicle within the meaning of the statute if he would be considered to be "operating" were he awake.[1]

---

[1] Numerous states have held that a defendant may be in "actual physical control" of a stationary vehicle even though asleep or uncon-

Consequently, our decision today is inconsistent not only with the language,[2] but the result of *People v Fulcher*.[3] The defendant in that case was found with his automatic transmission in drive, his front wheels on the road, and his rear wheels in a ditch. Because that is also a "danger [that] the OUIL statute seeks to prevent," *ante* at 404, this Court's decision that the defendant was not operat-. ing his vehicle at the time he was found is no longer viable.

II

In addition, I agree with the amicus curiae that even if the defendant were not technically "operating" his vehicle in the presence of the officer, he would not be entitled to the remedy he is seeking —suppression of evidence.

It should be clear that the defendant's arrest does not implicate the Fourth Amendment exclusionary rule[4] because there appears to be much more than probable cause to believe that defendant operated his vehicle while intoxicated.

scious when found by an officer. See, e.g., *State v Schwalk*, 430 NW2d 317 (ND, 1988); *Milwaukee Co v Proegler*, 95 Wis 2d 614; 291 NW2d 608 (App, 1980); *State v Smelter*, 36 Wash App 439; 674 P2d 690 (1984).

[2] See *ante* at 405.

[3] Our decision, however, is consistent with the result in *People v Pomeroy*. The question in that case was whether there was sufficient evidence to support defendant's conviction. Although the defendant's car was running, its lights were off and it was parked in front of the bar where the defendant testified that he had been drinking. Unlike the case before us, there was no evidence in *Pomeroy* that the defendant had driven anywhere while intoxicated.

[4] See 1 LaFave & Israel, Criminal Procedure, § 3.5(a), p 242 ("[i]t appears that the Fourth Amendment presents no barrier to abolition of the felony-misdemeanor distinction so as to permit warrantless arrests on probable cause in all cases"); see also *People v Ward*, 73 Mich App 555, 561, n 4; 252 NW2d 514 (1977) ("[t]he rule that probable cause is not sufficient to justify a warrantless misdemeanor arrest is a creation of statute, not of the Michigan or United States Constitutions").

Whether suppression is appropriate is a question of statutory interpretation and thus one of legislative intent. At issue here is MCL 764.15; MSA 28.874, which provides, in pertinent part:

A peace officer, without a warrant, may arrest a person in the following situations:

(a) When a . . . misdemeanor . . . is committed in the peace officer's presence.

\*   \*   \*

(h) When the peace officer has reasonable cause to believe that the person was, at the time of an accident, the driver of a vehicle involved in the accident and was operating the vehicle upon a public highway or other place open to the general public.

Although nothing in the statute alludes to exclusion of evidence, the Court of Appeals held that because the arresting officer did not have a warrant, the evidence must be suppressed if the Court finds that defendant was not committing a misdemeanor in the presence of the officer.

Even if the defendant did not commit a misdemeanor in the presence of the arresting officer, suppression is not an appropriate remedy. In *People v Burdo*, 56 Mich App 48, 52; 223 NW2d 358 (1974), the Court of Appeals held that it was not error to admit evidence of a Breathalyzer test even though the officer who arrested the defendant never saw him operate his vehicle:

Where, as here, the officer had probable cause to believe that the crime had been committed, and therefore had the constitutionally required basis to search and seize, there would appear to be no need to suppress such evidence, even though the arrest was statutorily illegal.

*Burdo* appears to have been the only published

opinion to squarely address whether a defendant
was entitled to suppression of evidence discovered
after an officer made an arrest without a warrant
for a misdemeanor committed outside his presence.
In the eighteen years after *Burdo* was decided, the
Legislature amended this statute four times, each
time expanding officers' authority to make misde-
meanor arrests without warrants, without specify-
ing that the remedy should be suppression or
otherwise casting doubt on *Burdo.*

The Legislature's apparent acquiescence[5] in the
result of *Burdo* is understandable in light of the
statute's history. Before this statute was enacted, a
police officer had authority, under the common
law, to make an arrest without a warrant for a
misdemeanor committed in his presence only if it
involved a breach of the peace. See, e.g., *Davis v
Burgess,* 54 Mich 514; 20 NW 540 (1884); see,
generally, *People v Dixon,* 392 Mich 691, 697; 222
NW2d 749 (1974). Thus, the original purpose of the
statute, which eliminated the requirement of a
breach of the peace, was to expand officers' author-
ity to arrest. This history does not suggest a legis-
lative intent to require suppression.[6]

Not until 1992 did any published authority hold
that suppression is appropriate where an officer
makes an arrest without a warrant for a misde-
meanor. See *People v Spencley,* 197 Mich App 505,
508; 495 NW2d 824 (1992). The *Spencley* decision,
however, failed to address *Burdo.* In addition, it

---

[5] I am cognizant of the difficulties in reaching sound conclusions
from legislative inaction. See *Chaney v Dep't of Transportation,* 447
Mich 145, 176, n 9; 523 NW2d 762 (1994) (BOYLE, J., concurring). I
draw further support for my conclusion from our Legislature's history
of removing unnecessary obstacles to OUIL prosecutions. See *People v
Keskimaki,* 446 Mich 240, 259-262; 521 NW2d 241 (1994) (BOYLE, J.,
dissenting).

[6] The traditional remedy appears to have been a civil suit. See, e.g.,
*Larson v Feeney,* 196 Mich 1; 162 NW 275 (1917); *Klein v Pollard,* 149
Mich 200; 112 NW 717 (1907).

relied on the Fourth Amendment "fruit of the poisonous tree" rule, even though the arrest of the defendant and the seizure of the evidence did not violate the Fourth Amendment. It is well established that this rule does not apply to nonconstitutional violations. See, e.g., *Michigan v Tucker,* 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974); *United States v Gonzalez-Sandoval,* 894 F2d 1043, 1048 (CA 9, 1990).

Suppression is particularly inappropriate on the facts of the present case. These facts are far removed from what would be the archetype violation of the statute: a misdemeanor arrest without a warrant on the basis of reports from a non-law-enforcement witness. This officer, who could not be expected to master the intricacies of Michigan appellate case law, could have reasonably believed that a misdemeanor was being committed in her presence. As the United States Supreme Court explained in *Michigan v Tucker, supra,* 417 US 447, threats to suppress evidence cannot be expected to deter reasonable police conduct:

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

In cases where suppression serves no purpose, it is far too extreme a remedy:

> Application of the rule thus deflects the truth-

finding process and often frees the guilty. The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice. Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice. [*Stone v Powell*, 428 US 465, 490-491; 96 S Ct 3037; 49 L Ed 2d 1067 (1976).]

I would hold that suppression of evidence is not the legislatively intended remedy.[7]

RILEY, J., concurred with BOYLE, J.

WEAVER, J., took no part in the decision of this case.

---

[7] Although I would not have expected the statute to state what is *not* a remedy in cases in which the grant of authority has been exceeded, the Legislature could clarify any possible confusion by amending the statute to allow for admission of evidence under these circumstances.