83 F.3d 422
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles ANDERSON, Next Friend of Ibrahim Boumelhem and
Franklin Gates, Minors, Plaintiff-Appellant,
v.
Oussama MEHAIDLI, d/b/a Flooring Master, Defendant-Appellee,
Flooring Master, Inc., Defendant.
 No. 94-2127.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1996.
 
 Before: BROWN, NELSON, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Appellant Charles Anderson, Next Friend of Ibrahim Boumelhem and Franklin Gates, appeals the grant of summary judgment in favor of Appellee Oussama Mehaidli, d/b/a Flooring Master ("Mehaidli") in this diversity action arising from a tragic fire that ignited in Mehaidli's van and severely burned two minors. We affirm.
 
 I. BACKGROUND
 
 2
 In August 1989, Mehaidli, who operates a carpet installation business in Toronto, dropped off his commercial van at the home of Mohammed Boumelhem ("Mr. Boumelhem"), a former friend who is a certified mechanic and operates a garage, so that Mr. Boumelhem could do some body work and exterior painting on the van while Mehaidli was away on vacation for one and a half months. According to Mr. Boumelhem, Mehaidli told him that he and his family, including his children, could use the van while Mehaidli was away. (J.A. at 324). The van had only two bucket seats in the front and contained materials and tools from Mehaidli's carpet installation business in the back, which was seatless.
 
 
 3
 On August 13, 1989, the Boumelhem family was planning to use Mehaidli's van to go on a picnic. After loading the van with picnic supplies, Susan Boumelhem ("Mrs. Boumelhem") pushed to the side the items Mehaidli had left in the van and placed Ibrahim, who was seven-months old, on the floor of the van behind the passenger seat. She left her purse, which contained a Bic lighter, on the floor of the van next to Ibrahim. According to Mrs. Boumelhem, she left Ibrahim and Franklin, who was four years old at the time, in the van for only three to four minutes while she went back to the house to get the other family members. While she was gone, Franklin ignited something in the van using Mrs. Boumelhem's lighter, and a fire erupted.
 
 
 4
 A complaint was filed on behalf of the minor children in the Circuit Court for the County of Wayne in Michigan, alleging claims against several defendants. See Complaint (J.A. at 7-27). The plaintiff sued Bic Corporation for negligent design of the cigarette lighter, negligent failure to warn, negligent manufacture, breach of implied warranty, willful and wanton misconduct, negligent misrepresentation, fraud, and intentional tort. The complaint also alleged breach of implied warranty by Fahs, Inc. ("Fahs"), the alleged distributor or seller of the cigarette lighter. Plaintiff also sued Chembond Limited ("Chembond"), alleging that it designed and packaged the floor adhesive ignited by Franklin, and asserting claims for negligent design, negligent failure to warn, and negligent manufacture. In addition, the plaintiff sued Dragona Carpet Supplies, Inc. ("Dragona"), the alleged distributor or seller of the floor adhesive ignited by Franklin, and Shoppers World, Inc. ("Shoppers World"), the alleged distributor or seller of the clothing ignited by Franklin. The complaint also included counts against Flooring Master, Inc. ("Flooring Master"), for negligence and Mehaidli for auto negligence under M.C.L. 257.401. Finally, the plaintiff sued Mohammed Boumelhem for premises liability. The Michigan trial judge entered consent orders of dismissal as to Dragona, Fahs, Shoppers World, Boumelhem, and Chembond. (J.A. at 122-28; 131-38). Bic Corporation moved for summary disposition, which the trial court granted (J.A. at 130), and the Michigan Court of Appeals affirmed. See Boumelhem v. Bic Corp., 535 N.W.2d 574, 576 (Mich.Ct.App.), special panel not convened, 535 N.W.2d 802 (Mich.Ct.App.1995).
 
 
 5
 The only remaining defendants, Mehaidli and Flooring Master, removed the action to federal court. The plaintiff filed an amended complaint on behalf of the minors, asserting allegations of negligent operation of a vehicle with the owner's consent under M.C.L. § 257.401, negligent entrustment, and negligence against both Flooring Master and Mehaidli. (J.A. at 139-52). The district court granted defendants' motion for summary judgment, finding that the plaintiff failed to show that defendants were liable under M.C.L. § 257.401 or for "negligent entrustment" under Michigan law. Furthermore, the district court granted summary judgment on plaintiff's negligence claim because the plaintiff failed to show that defendants' negligence proximately caused the children's injuries and, alternatively, because the negligence of the children's parents was an intervening superseding cause of the children's injuries.
 
 II. ANALYSIS
 
 6
 This court reviews a district court's grant of summary judgment de novo, applying the same test that the district court utilizes. Adkins v. United Mine Workers, 941 F.2d 392, 399 (6th Cir.1991), cert. denied, 502 U.S. 1098 (1992). Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if there is no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.
 
 
 7
 Since this is a diversity action, we apply the same law as Michigan state courts would apply. See Erie v. Tompkins, 304 U.S. 64, 78 (1938). If a state's highest court has decided an issue, "we are bound by that decision unless we are convinced that the high court would overrule it if confronted with facts similar to those before us." Kirk v. Hanes Corp., 16 F.3d 705, 707 (6th Cir.1994) (citing Bernhart v. Polygraphic Co. of Am., 350 U.S. 198, 205 (1956)). If the state's highest court has not spoken, we will consider decisions of a state's appellate court "as authoritative absent strong showing that the state's highest court would decide the issue differently." Kirk, 16 F.3d at 707 (citation omitted).
 
 
 8
 A. Negligent Operation of a Vehicle Under M.C.L. § 257.401(1).
 
 
 9
 The district court concluded that Mehaidli was not liable under M.C.L. § 257.401(1), which provides:
 
 
 10
 The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge.
 
 
 11
 The term "operator" is defined as "every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway." M.C.L. § 257.36. The term "operate" and "operating" are defined as "being in actual physical control of a vehicle regardless of whether or not the person is licensed under this act as an operator or chauffeur." M.C.L. § 257.35a.
 
 
 12
 The district court found that the Michigan statute and the case law interpreting the statute contemplate the actual "operation" of a motor vehicle by someone in order to impose liability on the owner. In North v. Kolomyjec, 502 N.W.2d 765 (Mich.Ct.App.1993), an employee at a quick oil change shop decided to check the oil of the defendant's car by starting the engine while reaching through the window to turn the key in the ignition, which caused the car to lurch forward and injure the plaintiff. Id. at 766. The court found that the mechanic had been "operating" the vehicle under M.C.L. § 257.401(1) because the employee was "in actual physical control of the vehicle at the time of the injury." Id. at 767. In People v. Wood, 538 N.W.2d 351 (Mich.1995), a case involving a charge of operating under the influence of liquor, police officers found Wood unconscious in his van at a McDonald's drive-through window. Id. at 352. He was slumped forward, with his head resting on the steering wheel and his foot resting on the brake while the engine was running and the automatic transmission was in drive. Id. The Michigan Supreme Court held that "[o]nce a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it [under M.C.L. § 257.36] until the vehicle is returned to a position posing no such risk." Id. at 353.[1]
 
 
 13
 Anderson claims that Mr. Boumelhem was "operating" the vehicle because Mehaidli gave him permission to use the van and Mr. Boumelhem had driven the van, parked it in his driveway, put oil in the engine, placed the keys in the ignition,[2] and instructed that his children and picnic supplies be loaded into the van before the fire erupted.[3] However, it is undisputed that the van was parked in Boumelhem's driveway, the engine of the van was not running at the time of the fire, and no one other than the children was even near the van. Moreover, it is undisputed that the minor children's injuries were caused by a fire started by the cigarette lighter, not by the operation of the van. As Kolomyjec and Wood demonstrate, the statutory definition of "operating" is meant to reach the type of physical control that places a vehicle in motion or in a position posing a risk of collision. Furthermore, in those cases, the individuals found to be "operating" vehicles were in or near the vehicle while the engine was running at the time of the accident. Therefore, we affirm the district court's finding that the appellant failed to state a claim under M.C.L. § 257.401(1).
 
 B. Negligent Entrustment
 
 14
 Under Michigan law, to prove negligent entrustment of a motor vehicle, a plaintiff must prove "that the entrustee was an incompetent driver, that the entrustor knew it, and that the entrustment was causally connected with the accident." Mowinski v. Bishop, 163 N.W.2d 655, 657 (Mich.Ct.App.1968) (citation omitted). Liability is imposed for negligent entrustment because "an owner or lender of a motor vehicle has the duty to refrain from placing it in the hands of a known unfit or incompetent driver for operation on public highways." Worth v. Dortman, 288 N.W.2d 603, 608 (Mich.Ct.App.1979), lv. denied, No. 64.319 (Mich. May 6, 1980). Since Anderson failed to produce any evidence that Boumelhem was a "known unfit or incompetent driver" or that the injuries in this case resulted from the operation of the motor vehicle, Anderson failed to prove negligent entrustment of an automobile.
 
 
 15
 We also reject Anderson's negligent entrustment claim to the extent he asserts that the van was a "dangerous instrumentality" and Mehaidli should have known that Boumelhem would not know how to handle the flammable substances in it. See Moning v. Alfono, 254 N.W.2d 759, 768 (Mich.1977) ("The doctrine of negligent entrustment is not peculiar to automobiles but rather an ordinary application of general principles for determining whether a person's conduct was reasonable in light of the apparent risk."). Not only was Boumelhem a certified mechanic with many years of experience working on automobiles surrounded by flammable liquids and materials, but also Anderson has provided no basis to infer that Mehaidli knew or should have known that Boumelhem was incompetent with respect to his knowledge of flammable substances. See Fredericks v. General Motors Corp., 311 N.W.2d 725, 727 (Mich.1981) ("To sustain a cause of action for negligent entrustment a plaintiff must prove that defendant knew or should have known of the unreasonable risk propensities of the entrustee."). Accordingly, we affirm the district court's grant of summary judgment on Anderson's negligent entrustment claim.
 
 C. Negligence
 
 16
 Anderson claims that the district court erred by granting summary judgment on the negligence claim. Under settled Michigan law, "[t]o establish a prima facie case of negligence, the plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages." Babula v. Robertson, 536 N.W.2d 834, 837 (Mich.Ct.App.1995), lv. denied, 451 Mich. ---- (1996). The district court held that Anderson failed to show that Mehaidli proximately caused the injuries to the Boumelhem children, and alternatively, that the negligence of the parents of Ibrahim Boumelhem and Franklin Gates constituted an intervening, superseding cause of the children's injuries that relieves Mehaidli of liability for negligence.
 
 
 17
 We agree with the district court that the negligence of Mrs. Boumelhem constitutes an intervening, superseding cause of the children's injuries. "An intervening cause is one which comes into active operation in producing harm to another after the negligence of the defendant." Coy v. Richard's Industries, Inc., 428 N.W.2d 734, 737 (Mich.Ct.App.1988), lv. denied, 432 Mich. 856 (1989). See also McMillian v. Vliet, 374 N.W.2d 679, 682 (Mich.1985) (citing same definition of "intervening cause," from Restatement (Second) of Torts, § 441). "If this intervention is a superseding cause, the defendant is relieved from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the injury." Coy, 428 N.W.2d at 737. However, in order to relieve the original actor of liability, the intervening act must not be reasonably foreseeable. McMillian, 374 N.W.2d at 682.
 
 
 18
 As the district court stated, "[a] third party's negligent failure to prevent harm to the plaintiff may constitute an intervening, superseding cause relieving the defendant of liability for the plaintiff's injury." District Court's Opinion, at 19 (J.A. at 172). According to the Restatement (Second) of Torts, when a third party fails to prevent harm, courts should consider:
 
 
 19
 the degree of danger and the magnitude of the risk of harm, the character and position of the third person who is to take responsibility, his knowledge of the danger and the likelihood that he will or will not exercise proper care, his relation to the plaintiff or to the defendant, the lapse of time, and perhaps other considerations. The most that can be stated here is that when, by reason of the interplay of such factors, the court finds that full responsibility for control of the situation and prevention of the threatened harm has passed to the third person, his failure to act is then a superseding cause, which will relieve the original actor of liability.
 
 
 20
 Restatement (Second) of Torts, § 452(2), Comment f.
 
 
 21
 However, we emphasize that the instant case involves more than a failure to prevent harm due to a lack of parental supervision because Mrs. Boumelhem placed the children in Mehaidli's van and then left them unattended. See Restatement (Second) of Torts, § 441(1), Comment b (describing, as an example of intervening force, a situation where "the actor's negligence has created a situation harmless unless something further occurs, but capable of being made dangerous by the operation of some new force and in which the intervening force makes a potentially dangerous situation injurious"). The minors in this case did not wander into the van on their own. Mrs. Boumelhem placed them inside the van amidst the carpet installation materials, and she left her purse containing a Bic lighter within Franklin's reach. Mrs. Boumelhem then left the children unsupervised long enough for Franklin to retrieve the lighter and ignite a fire (which apparently took only a few minutes).
 
 
 22
 "The existence or nonexistence of an intervening or superseding cause is largely a matter of policy." Poe v. Detroit, 446 N.W.2d 523, 529-30 (Mich.Ct.App.1989), lv. denied, 437 Mich. 874 (1990). Only two years ago another panel of our court stated that
 
 
 23
 [t]he public policy of Michigan, as evidenced in Moning, provides that the primary responsibility for safeguarding children from the obvious and inherent dangers associated with the hundreds of simple tools with which we surround ourselves rests with the parents of these children and not the manufacturer of the simple tool.
 
 
 24
 Kirk v. Hanes Corp., 16 F.3d 705, 711 (6th Cir.1994) (applying Michigan law and affirming the grant of summary judgment in a products liability case in favor of a lighter manufacturer on the ground that parents are responsible for safeguarding children against obvious dangers inherent in simple products). This court in Kirk relied heavily on Adams v. Perry Furniture Co., 497 N.W.2d 514 (Mich.Ct.App.1993), lv. denied, 519 N.W.2d 860 (Mich.1994), where the Michigan Court of Appeals affirmed the trial court's grant of summary judgment in favor of the manufacturer of a disposable lighter in a negligence and product liability action for injuries to unsupervised minor children who died in a fire started by a minor who ignited a mattress with a butane lighter. The Adams court reasoned that "the risk of danger to children is best obviated by the supervisory control of the product by its adult purchasers." Id. at 520. See also Boumelhem, 535 N.W.2d at 578 (granting summary judgment in favor of Bic Corporation on plaintiff's claim of design defect based on Adams ). Although Adams, Boumelhem, and Kirk dealt with products liability claims against the manufacturers of Bic lighters, these cases reflect the policy of the state of Michigan that parents are primarily responsible for supervising minors from harmful exposure to adult products.
 
 
 25
 We recognize that under Michigan law, there is some support for appellant's view that raising the issue of negligent parental supervision of minor children constitutes reversible error. See Appellant's Brief, at 23. See, e.g., Wymer v. Holmes, 375 N.W.2d 384, 387 (Mich.Ct.App.1985) ("the studied injection of the subject of parental fault constitutes reversible error"), aff'd on other grounds, 412 N.W.2d 213 (Mich.1987). Although the Michigan Supreme Court abolished the parental immunity doctrine in Plumley v. Klein, 199 N.W.2d 169 (Mich.1972), it imposed the "modern rule" with two exceptions relating to negligent supervision:
 
 
 26
 A child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent. Like our sister states, however, we note two exceptions to this new rule of law: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.
 
 
 27
 Id. at 172-73. Of course, Mehaidli does not argue that the parents should be liable for their children's injuries, but merely that their negligence constitutes a superseding, intervening cause. The Michigan Court of Appeals rejected a similar argument in Wymer, where the defendants argued that even though the mother's negligence was irrelevant to the case on the issue of fault, it remained material to the issue of proximate cause. 375 N.W.2d at 387-88.
 
 
 28
 Nonetheless, even if Wymer is a correct statement of Michigan law, i.e., that the issue of negligent parental supervision cannot be argued even to show intervening superseding cause, the conduct at issue in the instant case extends beyond a negligent supervision claim because Mrs. Boumelhem took the affirmative step of placing the children into the van containing potentially dangerous carpet laying materials. See, e.g., Wright v. Wright, 351 N.W.2d 868, 869-71 (Mich.Ct.App.1984) (where child wounded herself with gun that father knew was in car after she entered the car while her father was not watching, court found that "[u]nlike cases falling outside of the parental supervision exception, this case does not involve the direct commission of a wrongful act"). Thus, Mrs. Boumelhem's conduct constitutes non-supervisory ordinary negligence that does not fall within the Plumley exceptions. See Ellis v. Target Stores, Inc., 842 F.Supp. 965, 971 (W.D.Mich.1993) (holding that, in negligence action against store by parents of child who fell from shopping cart, the doctrine of parental immunity did not extend to a parent's acts of ordinary negligence in failing to obtain safety strap for cart as advised by safety signs, which occurred prior to any potential negligent supervision).[4] Moreover, we find it significant that Adams, Kirk, and Boumelhem do not address any problem with placing responsibility on the adult purchasers of products (including parents) in terms of the implicit finding of negligent parental supervision upon which such a conclusion rests.
 
 
 29
 We are bound in this diversity case to apply Michigan law, and we are further constrained by this court's precedent. Therefore, we hold as a matter of law that although it is foreseeable that children will play with cigarette lighters, this danger is open and obvious. See Adams, 497 N.W.2d at 519. Thus, Mehaidli had no duty to warn the Boumelhems of the danger of the children's use of a cigarette lighter in his van, particularly since the lighter belonged to Mrs. Boumelhem and the controlling precedent places the responsibility on the adult owners of cigarette lighters to supervise children to obviate the risk of danger. See id. at 519-20. Moreover, it is not foreseeable that a parent would place two small children unattended in a van containing commercial carpet laying materials.[5] Accordingly, Mrs. Boumelhem's negligence supersedes Mehaidli's negligence, if any, and we affirm the district court's grant of Mehaidli's motion for summary judgment on Anderson's negligence claim.
 
 
 
 [1]
 The Court noted that its holding in People v. Pomeroy, 355 N.W.2d 98, 99 (Mich.1984), that "a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping," was an overgeneralization and reflects "an assumption that there was no danger of collision...." Wood, 538 N.W.2d at 353
 
 
 [2]
 There is some controversy as to whether the keys were in the ignition. Boumelhem's affidavit states that he had placed the keys in the ignition "moments before the fire" whereas in his deposition he testified that he could not remember whether the keys had been removed from the ignition. It is well settled that a party will not succeed in creating a factual issue by simply filing an affidavit, after a motion for summary judgment has been made, that contradicts his earlier deposition testimony. Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir.1986). Nonetheless, whether the keys were in the ignition is not determinative here
 
 
 [3]
 Anderson further argues that an operator need not be inside the vehicle to be deemed to be in actual physical control of it and cites two cases to support his view. See Boyd v. Paris, 168 N.W.2d 432, 433 (Mich.Ct.App.) (affirming trial court's decision that defendant breached his duty under a municipal code to remove his disabled vehicle because he left it at the scene of accident while he went to the hospital, and plaintiffs subsequently struck defendant's car), lv. denied, No. 52,433 (Mich. December 10, 1969); Moore v. U.S. Truck Co., 244 N.W. 228, 228 (Mich.1932) ("defendant truck company was guilty of negligence in leaving its truck and trailers upon the highway without a rear warning light" although not liable based on other grounds), overruled in part, Johnson v. Miller, 100 N.W.2d 275, 281 (Mich.1960). However, these cases deal with motor vehicles left negligently parked on public highways that caused accidents, and neither involved the issue of "operating" a motor vehicle or application of the owner's liability statute
 
 
 [4]
 This view is also supported by the pattern in "parental discretion" cases identified by Prosser & Keeton, Torts (5th ed. 1984), § 122, p. 908-09 (cited in Haddrill v. Damon, 386 N.W.2d 643, 645 (Mich.Ct.App.1986)):
 Courts apparently feel that the jury should not be permitted to second-guess the parent as to the exact amount of supervision, training or freedom a child should have, and similarly that household dangers such as the vaporizer, electrical cord, or slippery rug are such constant and common risks that negligence should not too readily be inferred when they cause harm. But if the parent engaged in affirmative activity, as where he drives a tractor, or where he recognizes a danger and tries to guard against it, but does so in a negligent manner, the role of "parental discretion" is much smaller and liability may be imposed. Even to allow a small child near dangerous instrumentalities may be enough to justify liability....
 
 
 [5]
 Therefore, it is irrelevant that Mehaidli had left his own lighter, which was not at all involved in the fire, in his van