PEOPLE v LECHLEITNER

Docket No. 293577. Submitted October 7, 2010, at Detroit. Decided
    December 7, 2010, at 9:00 a.m.

Matthew R. Lechleitner was convicted following a bench trial in the
Ingham Circuit Court of operating a motor vehicle while under the
influence of alcoholic liquor and causing death, MCL 257.625(4).
The court, William E. Collette, J., sentenced defendant as a
second-offense habitual offender to 43 to 270 months in prison.
Defendant appealed, contending that the court applied an incor-
rect definition of the term "operate" in concluding that defendant
was operating his vehicle at the time in question and erroneously
scored offense variable (OV) 9, MCL 777.39, which concerns the
number of victims.

The Court of Appeals *held*:

1. The trial court, in concluding that defendant was operating
his vehicle at the relevant time, properly followed *People v Wood*,
450 Mich 399 (1995), which stated that "operating" must be
defined in terms of the danger that MCL 257.625 seeks to prevent:
the collision of a vehicle being operated by a person under the
influence of intoxicating liquor or a controlled substance with
other persons or property. The *Wood* court additionally stated that
once a person using a motor vehicle as a motor vehicle has put the
vehicle in motion, or in a position posing a significant risk of
causing a collision, such a person continues to operate it until the
vehicle is returned to a position posing no such risk. MCL
257.625(4) does not require that the defendant's vehicle be in
motion at the time of the accident, but rather that the victim's
death be caused by the defendant's operation of the vehicle while
intoxicated. In this case, defendant was intoxicated, operated his
vehicle, and crashed it, with the result that it sat in the middle of
the freeway at night creating a risk of injury or death to others.

2. The trial court correctly identified a total of four victims for
purposes of scoring OV 9. Those victims were the driver (the
decedent) and the passenger of the vehicle that stopped out of
concern following defendant's accident and the driver and passen-

ger of another vehicle that swerved to avoid plaintiff's vehicle and struck the vehicle that had stopped, killing the driver of the stopped vehicle.

Affirmed.

WILDER, P.J., concurring, wrote separately in order to decline to join the majority's comments concerning the use of dictionaries to interpret a statute, which fail to fully acknowledge the established rules concerning the subject.

1. CRIMINAL LAW — MOTOR VEHICLES — OPERATION OF MOTOR VEHICLES WHILE UNDER THE INFLUENCE OF ALCOHOLIC LIQUOR OR CONTROLLED SUBSTANCES — WORDS AND PHRASES — OPERATING.

The term "operating" in the statute prohibiting operation of a motor vehicle while under the influence of or visibly impaired by alcoholic liquor or a controlled substance must be defined in terms of the danger that the statute seeks to prevent: the collision of a vehicle being operated by a person under the influence of or visibly impaired by alcoholic liquor or a controlled substance with other persons or property; once a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk (MCL 256.625).

2. CRIMINAL LAW — MOTOR VEHICLES — OPERATION OF MOTOR VEHICLES WHILE UNDER THE INFLUENCE OF ALCOHOLIC LIQUOR OR CONTROLLED SUBSTANCES AND CAUSING DEATH — MOVEMENT OF VEHICLE AT TIME OF ACCIDENT.

The statute that provides that a person may be convicted when the person operates a motor vehicle while under the influence of or visibly impaired by alcoholic liquor or a controlled substance and by the operation of the vehicle causes the death of another person does not require that the defendant's vehicle be in motion at the time of the accident causing the death, but rather that the victim's death be caused by the defendant's operation of the vehicle while intoxicated (MCL 257.625[4]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Stuart J. Dunnings, III*, Prosecuting Attorney, *Guy L. Sweet*, Appellate Division Chief, and *John J. Murray*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Christopher M. Smith*) for defendant.

Before: WILDER, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM. Defendant appeals as of right his conviction of and sentence for operating a motor vehicle while under the influence of alcoholic liquor and causing death, MCL 257.625(4). The circuit court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve a term of imprisonment of 43 to 270 months. We affirm. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

This case arises from a traffic accident that occurred during the early morning hours of November 22, 2007. The parties stipulated that defendant's blood alcohol content was 0.12 grams of alcohol per 100 milliliters of blood.[1] According to the testimony, during the time his blood alcohol content exceeded the statutory limit, defendant drove his truck on a slippery freeway surface and lost control. The truck struck the right guardrail, then the left guardrail, and then stopped in the middle of the freeway, taking up two lanes. Defendant turned off his headlights and activated his hazard lights, then opened the door and attempted to propel the truck out of harm's way with his leg. Another driver with a passenger in his vehicle swerved to miss the truck, then stopped on the shoulder out of concern for the accident. Then a third car, which also had a driver and a passenger, swerved to avoid defendant's truck and, in so doing, struck the vehicle that had stopped on the shoulder, killing that driver.

---

[1] This is well over the proscribed limit of "0.08 grams or more per 100 milliliters of blood . . . ." MCL 257.625(1)(b).

On appeal, defendant argues that the trial court applied an incorrect definition of "operate" in concluding that defendant was operating his vehicle at the time in question and that the court erroneously scored one of the offense variables under the sentencing guidelines.

Statutory interpretation is a question of law calling for review de novo. *People v Denio*, 454 Mich 691, 698; 564 NW2d 13 (1997). However, defendant admits that this issue is unpreserved. A defendant pressing an unpreserved claim of error must show a plain error that affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). When plain error is shown, the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

MCL 257.625(4) sets forth penalties for a person who "operates a motor vehicle" while intoxicated "and by the operation of that motor vehicle causes the death of another person . . . ." MCL 257.35a defines "operate" and "operating" as "being in actual physical control of a vehicle . . . ." MCL 257.36 defines "operator" as "every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway."

In explaining its views regarding operation and causation, the trial court stated as follows:

> [A] person who places a motor vehicle in motion or in a position posing a significant risk of causing a collision, remains responsible for that motor vehicle until such time as that vehicle is put into some position where it poses no risk to other drivers. In other words, we cannot simply stop our car in the middle of the road for whatever reason, in this case striking the curbs or striking the sides, but we can't just stop our car in the middle of the road, stagger off somewhere, standing somewhere else, and expect our li-

ability for that vehicle to end. People are responsible for placing that vehicle in a proper environment.

Now, the only exceptions to that would be in situations where there was a grossly negligent act by another citizen or some type of emergency occurs . . . . But basically, ordinary negligence by other citizens does not cause a person otherwise responsible for a serious breach of the law to be not liable.[2]

On appeal, defendant concedes that the trial court addressed the issue of what constituted operation of a vehicle so as to comport with our Supreme Court's opinion in *People v Wood*, 450 Mich 399; 538 NW2d 351 (1995). In that case, the Court stated that "operating" must be defined "in terms of the danger the OUIL statute [MCL 257.625] seeks to prevent: the collision of a vehicle being operated by a person under the influence of intoxicating liquor with other persons or property." *Id.* at 404. Accordingly, "[o]nce a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk." *Id.* at 404-405.

This is consistent with both the language and the purpose of MCL 257.625(4). The statute provides that a defendant may be convicted when he or she "operates a motor vehicle" while intoxicated and "by the operation of that motor vehicle causes the death of another person . . . ." The statute does not require that the defendant's vehicle be in motion at the time of the accident, but rather that the victim's death be caused by the defendant's operation of the vehicle while intoxicated. In this case, defendant was intoxicated, operated his vehicle, and crashed it, with the result that it sat in the middle of the freeway at night creating a risk of injury or death to others.

---

[2] This case contains no allegation of intervening gross negligence.

Defendant disparages the reasoning of *Wood* as "outmoded" and suggests instead that we adopt the definition of "operation" employed in a lay dictionary, i.e. "to cause to function." Defendant argues that, because after the crash his vehicle was no longer capable of functioning, defendant could not "cause" it to "function" and so, by definition, defendant could not have operated it. As just noted, we reject this argument as injecting a temporal component into the statute that is not present. Moreover, defendant's suggestion that we rely preeminently upon a lay dictionary to determine how to apply a statute ignores the axiom that the first requirement of statutory interpretation is to determine the intent of the Legislature. Certainly, a dictionary is one of the arrows in a court's quiver regarding statutory interpretation, but it is not the only one, nor is it necessarily the one that will bring the interpreting court closest to the Legislature's target. Moreover, reliance on a single dictionary definition fails to take into account the reality that there are many dictionaries of the English language while there is only one Michigan Legislature. We should not confuse the reference to a particular dictionary definition by the proponent of a certain result with the demanding task of statutory interpretation that judges are expected to perform using the available data and time-tested rules of construction.

Thus, we conclude that *Wood* remains good law and that the trial court properly followed it, and we affirm defendant's conviction.[3]

Defendant also challenges the scoring of offense variable (OV) 9, MCL 777.39, which concerns the num-

---

[3] We also note that, as recently as 2007, our Supreme Court adopted a broader interpretation of "operate" than defendant suggests when it concluded that "[t]he loading and unloading of passengers is an action within the 'operation' of a shuttle bus." *Martin v Rapid Inter-Urban Partnership*, 480 Mich 936 (2007).

ber of victims. "This Court reviews a sentencing court's scoring decision to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score." *People v McLaughlin*, 258 Mich App 635, 671; 672 NW2d 860 (2003). However, to the extent that a scoring issue calls for statutory interpretation, review is de novo. *Id.*

A score of 10 points is prescribed where "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). In rejecting defense counsel's challenge to the assessment of 10 points for this variable at sentencing, the trial court explained, "the other gentleman who was trying to assist [defendant] was in a place of danger. And . . . the people driving the other vehicle that had to swerve around everything were in a potentially dangerous situations because of it . . . ."

Defendant relies on *People v McGraw*, 484 Mich 120; 771 NW2d 655 (2009), to argue that OV 9 should have been scored at zero points, because only the person who died had been placed in danger. However, *McGraw* is plainly distinguishable. In that case, the sentencing offense was breaking and entering a general store and the trial court assessed 10 points for OV 9 on the ground that, in addition to the owner of the store, there were two additional victims placed in danger when the defendant drove from the scene of the offense with two passengers in his vehicle, was thereafter spotted and chased by the police, and crashed his car. *Id.* at 132-133. Our Supreme Court held that the transactional approach to scoring OV 9 was not appropriate. *Id.* at 133. "OV 9 does not provide for consideration of conduct after completion of the sentencing offense," and thus it

had to be scored in that case "solely on the basis of defendant's conduct during the breaking and entering." *Id.* at 133-134.

Using the *McGraw* approach, we conclude that defendant's intoxication and the fatal car collision endangered not only the person who died, but also both occupants of the car that struck that person; obviously, those three persons faced a serious risk of physical harm simultaneously. Further, there was also a passenger traveling with the decedent. While he was uninjured, he was also placed in danger.

Thus, the trial court correctly identified a total of four victims, resulting in a score of 10 points under OV 9, because, in addition to the decedent, defendant created a risk of physical injury to the decedent's passenger, the driver of the car that struck the decedent, and the passenger in that car, all in the course of the sentencing offense.

Affirmed.

WILDER, P.J. (*concurring*). I concur in the result reached by the majority, but decline to join the majority's comments concerning the use of dictionaries to interpret a statute, which fail to fully acknowledge the well-established rules concerning this subject. See *Liberty Hill Housing Corp v City of Livonia*, 480 Mich 44, 56 n 11; 746 NW2d 282 (2008).