# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

WILLIAM JOHN KUCHARSKI,

      Defendant-Appellant.

UNPUBLISHED
February 14, 2017

No. 330221
Lapeer Circuit Court
LC No. 14-011999-FH

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of operating while intoxicated, third offense, MCL 257.625(1)(c). Defendant was sentenced to 120 days in jail and 18 months' probation. We affirm.

Defendant argues that the prosecution failed to present sufficient evidence to convict defendant of operating while intoxicated because defendant was not "operating" the vehicle. We disagree.

Sufficiency of the evidence challenges are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). This Court reviews the evidence in a light most favorable to the prosecution to determine whether "the prosecution presented sufficient evidence from which a jury could convict defendant beyond a reasonable doubt." *Id.* "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

In order to convict defendant of operating while intoxicated under MCL 257.625(1), the prosecution must prove beyond a reasonable doubt that:

> (1) the defendant operated a motor vehicle (2) on a highway or other place open to the general public or generally accessible to motor vehicles (3) while under the influence of liquor or a controlled substance, or a combination of the two, or with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood. [*People v Hyde*, 285 Mich App 428, 448; 775 NW2d 833 (2009).]

Defendant does not contest that he was intoxicated on the morning of May 31, 2014. Further, while defendant argued at trial that he was not on a public roadway, this fact is not expressly

-1-

contested on appeal. Thus, defendant's main argument is that he was not operating, and had not operated, his friend's truck when the police arrived.

As to the first element, in cases involving an unconscious or asleep driver, Michigan courts define "operating," as used within the operating while intoxicated statute, in terms of risk of collision, as expressed in *People v Wood*, 450 Mich 399, 405; 538 NW2d 351 (1995).[1] In *Wood*, our Supreme Court found that even where a person is asleep or unconscious in a motionless vehicle, if the vehicle poses a risk of collision because it is likely to be moved, that person continues to operate the vehicle until it is in a position where it no longer poses such a risk. *Wood*, 450 Mich at 405. In *Wood*, the defendant was charged with operating while intoxicated after he was found unconscious in his still running van in a McDonald's drive-through. The defendant smelled of alcohol and had a beer between his legs. *Id*. at 402. The only thing keeping the van from moving was his foot resting on the brake pedal. *Id*.

The Court held that defendant was still operating the vehicle when the police arrived. *Id*. at 405. The Court reasoned that the term "operating" should be defined with the purpose of the statute in mind: to prevent the collision of a vehicle operated by an intoxicated person. *Id*. at 404. The Court explained that a person operates a vehicle where they put that vehicle into motion, or into a position creating a significant risk of a collision, and that he or she continues to operate that vehicle until it is returned to a position where it no longer poses such a risk. *Id*. at 405. The Court found that the defendant continued to operate his vehicle because the only thing preventing it from moving was his foot on the brake, leaving it in a position which created a significant risk of collision. *Id*.

In *People v Lechleitner*, 291 Mich App 56, 60-61; 804 NW2d 345 (2010), this Court concluded that *Wood* is still good law. In *Lechleitner*, the defendant appealed his operating while intoxicated causing death conviction, arguing that he was no longer operating his truck because it was not operational when a driver swerved to avoid his truck, hitting another car, which killed the other driver. *Id*. at 58. The defendant argued that because "his vehicle was no longer capable of functioning," he could no longer operate it. *Id*. at 61. This Court rejected this argument, reasoning that it "inject[ed] a temporal component into the statute that is not present." *Id*. Therefore, a person who places a motor vehicle in motion, or in a position creating a significant risk of causing collision, is still operating that vehicle until they put it into a position where it no longer poses a risk to other drivers, even if the vehicle is no longer operational. *Id*. at 60.

On the other hand, if a vehicle is no longer in a position posing a significant risk of a collision when the police arrive and the defendant did not have specific intent to drive while intoxicated, the defendant is not operating the vehicle, even where he or she admitted to driving

---

[1] But see *City of Plymouth v Longeway*, 296 Mich App 1, 9; 818 NW2d 419 (2012) (where this Court clarified that *Wood* does not apply to "situation[s] involving a conscious (albeit allegedly intoxicated) driver who [is] sitting inside a stationary vehicle and engaged in operational activity such as starting the engine and changing gears[,]" finding that in that situation, the statutory definition in MCL 257.35a should be applied).

while intoxicated. *People v Burton*, 252 Mich App 130, 141, 143-144; 651 NW2d 143 (2002). In *Burton*, a greenskeeper discovered the defendant parked next to a golf cart storage building and called 9-1-1 after he was unable to wake up the defendant, who was asleep behind the wheel of his truck with the engine running. *Id*. at 132. The defendant admitted that he had been drinking and smelled of alcohol. *Id*. His blood alcohol level was 0.18 and he admitted to driving his truck across the parking lot. *Id*. When police officers arrived, the truck was not moving and it was in park or neutral. *Id*. at 142.

This Court held that there was insufficient evidence that the defendant was operating his truck. *Id*. at 142-143. This Court found that there was insufficient evidence that the vehicle was in motion or that it created a significant risk of collision. *Id*. at 144. This Court reasoned that just because the engine was running did not mean that the defendant intended to drive the truck somewhere; it was possible that the defendant was using his truck as a shelter, rather than as a motor vehicle. *Id*. at 143, 145. Further, because the truck was in park or neutral and parked next to a storage building, it posed little risk of causing a collision. *Id*. at 144. This Court concluded by addressing the fact that the defendant had admitted to moving his truck across the parking lot by stating that it did not believe that this was the type of action the statute intended to prevent. *Id*. at 148. Therefore, if the evidence supports that a defendant had no intent to drive, but merely put a vehicle into motion without creating any danger of causing a collision, then police officers must have found the vehicle in a position likely to cause a collision for this Court to hold that the defendant operated the vehicle. *Id*. at 143-144.

When read together, these cases show that if a vehicle poses some sort of significant risk of causing a collision, either because it is not in park and in danger of moving while the defendant is asleep or unconscious, or because it is in the path of traffic when officers arrive, even if it is not operational, then the intoxicated person behind the wheel is operating the vehicle. When a vehicle is partially in a roadway or could possibly regain motion, and the driver is asleep or unconscious, this creates a situation where a crash is likely to occur.

In this case, Patrick Packan, the witness who discovered defendant and called 9-1-1, and Officer Laura Mohr both testified that they found defendant unconscious in the driver's seat of a truck, with the engine running, and the truck in drive. Like in *Wood*, the only thing keeping the truck from moving was defendant's foot on the brake. Defendant testified that he never drove the truck. Additionally, defendant argues that the truck was in no danger of causing a collision because it was facing a field and was also out of gas. Testimony established that the truck was 80% off the road and in a field area, slightly facing the field. Defendant presented witness testimony, through himself, John Kource, and Jennifer Stulz, that Kource drove the truck when defendant and Kource left Stulz's house and until it ran out of gas and coasted to the side of the road. Defendant stated that he only sat in the driver's seat after getting out of the passenger side of the truck to vomit. Further, the defense established through direct and cross-examination that no one had witnessed defendant drive or move the truck. On the other hand, the prosecution presented evidence that nobody else was in the truck at the time that they arrived and that nobody had seen anyone walking to or from the truck. Further, defendant stated to Officer Mohr that he must have been the one driving because no one else was in the vehicle.

Defendant relies heavily on *Burton*, arguing that he did not have the specific intent to drive and that a running engine does not equal the intent to drive. *Burton* is distinguishable from

*Wood* and *Lechleitner*, however, in that the truck in Burton was parked near a shed in a parking lot and was no longer in danger of causing a collision. *Burton*, 252 Mich App at 132, 142. In *Wood*, the truck was in danger of moving where the only thing preventing it from moving was the defendant's foot on the brake. *Wood*, 450 Mich at 405. In *Lechleitner*, the vehicle presented a danger because it was put into a position that created a risk of collision; specifically it was in the roadway, even though it was no longer operational. *Lechleitner*, 291 Mich App at 60. Viewing the evidence in a light most favorable to the prosecution, the truck that defendant was in created a significant risk of collision because the engine was running, it was in drive, and partially in the roadway. The truck was blocking part of the roadway and still presented a danger of veering into traffic if defendant's foot came off the brake. It is mere speculation that the truck would only have moved forward into a field and that this presented no danger to anyone else. Further, under *Lechleitner*, even if the truck was no longer operational, the fact that it was still in the roadway presented a danger of causing a collision. *Lechleitner*, 291 Mich App at 60. Thus, the vehicle was at significant risk of causing a collision.

Defendant presented evidence in an effort to discredit the prosecution's witnesses by pointing out the conflicting testimony of Packan and Officer Mohr. Both Packan and Officer Mohr testified that they shut off the engine and put the truck in park. In a further attempt to discredit Officer Mohr's testimony, defendant's father testified that Officer Mohr had told him that her memory is not what it used to be. Officer Mohr denied telling defendant's father that she had memory issues. Further, on cross-examination, the defense pointed to inconsistencies between Officer Mohr's police report, preliminary examination testimony, and testimony at trial; specifically, whether defendant's foot was on the brake pedal. Despite this inconsistency, Officer Mohr's police report and testimony was consistent as to the truck's engine running and the truck being in drive. Office Mohr explained the inconsistency, stating that she meant that she could not tell which foot was on the brake pedal, but a foot was on the brake pedal.

"[W]hen reviewing claims of insufficient evidence, this Court must make all reasonable inferences and resolve all credibility conflicts in favor of the jury verdict." *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). Very much like this case, in *Solmonson*, the defendant argued that another man had been driving the car that he was found in, unconscious and intoxicated in the driver's seat. *Id*. at 662. The car was parked just over the white fog lines, but still on the road pavement, with the engine off, but the keys still in the ignition and the engine still warm. *Id*. at 660. Unlike this case, the defendant presented no evidence to support his argument that someone else was driving the vehicle. *Id*. at 662. But this Court explained that even where the defendant present contradictory evidence, the prosecution "need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury[.]" *Id*. at 661. This Court affirmed the conviction, finding that "the jury must have concluded from the circumstantial evidence and reasonable inferences that the prosecutor met his burden of proving defendant was operating the vehicle in an intoxicated state *before* the police arrived[,]" noting that "this Court must draw all reasonable inferences in favor of the jury verdict." *Id*. at 663. Therefore, despite the inconsistent testimony of Packan and Officer Mohr, because all reasonable inferences should be made in favor of the jury verdict, there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant was operating the truck.

As to the second element, while not expressly disputed in the defendant's brief, defendant argued at trial that the truck was not on a public roadway. Multiple witnesses[2] testified that 20% of the truck was still in the roadway, with the other 80% being near a ditch in a field area. Officer Mohr also testified that the truck was enough in the roadway that if the truck had been unoccupied, she would have towed it. Packan testified that there was a portion of the road that could not be traveled because of defendant's vehicle. Thus, the prosecution presented sufficient evidence that the truck was still on a public road.

As to the third element, defendant does not contest that he was intoxicated at the time he was arrested. Defendant's blood alcohol content was recorded as a 0.22 by the Almont Police Department's DataMaster, which measures breath for blood alcohol content. Further, an independent blood draw measured defendant's blood alcohol content to be 0.17. Defendant established on cross-examination that the DataMaster was out of service just two days after his test, but he does not contest the results of the independent blood draw. Further, defendant admitted at trial, and to Jeffrey Ludwig, lieutenant with the Almont Fire Department, at the scene, that he had been drinking and was drunk at the time of his arrest. Thus, the prosecution presented sufficient evidence, and defendant does not contest, that defendant was intoxicated.

In summary, defendant does not contest that he was intoxicated, and the evidence supports that he was operating a motor vehicle on a public roadway. Defendant was found in the driver's seat of a truck that was running and in drive, meaning the truck was in danger of being put into motion if defendant were to remove his foot from the brake. Further, the truck was still partially on a public roadway, which created a risk of collision. Therefore, the evidence, viewed in a light most favorable to the prosecution, was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant was operating motor vehicle on a public road while intoxicated.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[2] Packan, Officer Mohr, and Kource.