*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER WILLIS,

Defendant-Appellant.

UNPUBLISHED
March 21, 2019

Nos. 340501; 340520
Macomb Circuit Court
LC Nos. 2017-000455-FH;
            2016-004579-FH

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

In Docket No. 340501, defendant appeals as of right his jury trial conviction of larceny of a firearm, MCL 750.357b. In Docket No. 340520, defendant appeals as of right his jury trial conviction of receiving and concealing a stolen firearm, MCL 750.535b(2). We affirm.

## I. BACKGROUND

This case arises from defendant's taking of a gun. Although defendant purchased the gun, he gave it to his girlfriend, Robyn Cherry, as a gift. At the time of purchase, the paperwork for the gun was filled out with Cherry's name; the gun was later registered with the police under Cherry's name as well. After defendant moved out of Cherry's apartment, Cherry noticed that the gun was missing and notified the police of the stolen firearm. Over a month later, Clinton Township Police Officer David Wheeler received a dispatch call regarding a potential domestic violence incident at the home of Veronica Isby, the mother of defendant's son. Upon arriving at Isby's apartment, Officer Wheeler heard "yelling and screaming." After entering the building, Officer Wheeler saw Isby walking in the common hallway and saw "items being thrown." Officer Wheeler found the reported stolen firearm in defendant's backpack, and after determining that there was an arrest warrant for defendant relating to the gun, arrested him and seized the weapon.

Defendant thereafter was charged with domestic violence, larceny of a firearm, and receiving and concealing a stolen firearm. However, the domestic violence charge was dismissed at the preliminary examination, prior to the trial on the remaining offenses. After a

-1-

trial, defendant was convicted of larceny of a firearm and receiving and concealing a stolen firearm. Additional facts necessary for a full discussion of the issues are set forth below.

## II. ANALYSIS

Defendant argues that the trial court erred in allowing the prosecution to introduce the testimony of Officer Wheeler regarding defendant's domestic dispute with Isby because his testimony constituted improper character evidence under MRE 404(b). We hold that if the introduction of such evidence was erroneous, defendant is not entitled to a new trial because he has not shown how the evidence's admission was outcome determinative.

To preserve a claim of evidentiary error, "a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). However, determining the proper standard of review in this case is not so straightforward and requires a rather lengthy discussion of the procedural history of the case.

Prior to trial, the prosecution provided notice of intent to introduce other acts of domestic violence. The notice encompassed admissibility on the bases of both MCL 768.27b and MRE 404(b). The notice stated:

> The above incidents should be allowed into evidence for numerous reasons. The statute was enacted to create an exception to the general rule that evidence of past crimes may not be used to prove the character of a person in order to show action in conformity therewith. This incident shows the character of the defendant: that he continually preys on a person with whom he has had a domestic relationship (a child in common) through physical and emotional abuse and threats. Additionally, these incidences are extremely relevant to allow the jury to assess the probability or improbability that the defendant has been falsely accused of the offense. Moreover, these incidences are exceptionally probative on the issue of the complaining witness's credibility.

> The prior acts of domestic violence is [sic] extremely probative of the Defendant's Act of Domestic Violence, his propensity to physically abuse a person with whom he has had a domestic relationship (a child in common), the victim's credibility, and also in assessing the improbability that the defendant has been falsely accused of this offense.

Following the filing of the notice, defendant moved in limine to prevent the introduction of previous acts evidence. However, the precise contours of the relief defendant sought are unclear. The motion did not specify a particular rule or statute as authority, but in the text asked the trial court to preclude the introduction of prior domestic violence misdemeanor *convictions*. In the prayer for relief, however, the defendant asked the court "to prevent the introduction of prior domestic violence *acts*." (Emphasis added.)

At a hearing held about two weeks before trial, defense counsel stated, "I have spoken with the prosecutor, and the prosecutor has conceded that my motion would be granted anyway, so she is withdrawing her notice to, on the 402(b) [sic – should be 404(b)] notification." The

prosecutor stated, "Yes, I'll be honest, I kind of messed up. . . . [O]n the file it says domestic violence and R&C stolen weapon, and that domestic violence was dismissed at district . . . . And all I did was look at the file and just routinely did it. . . . So that's my fault, and I shouldn't have filed it, I thought it [the domestic violence charge] was still existing, so I won't be able to bring up prior domestic violence on those two files." The trial judge stated, "Okay. Very well. Based on -- well, your motion is granted. . . . It sounds like [the prosecutor] is withdrawing her notice regarding this." The prosecutor then stated, "Yes, I am withdrawing. Thank you."

At trial, the prosecution called as a witness Officer Wheeler, one of the officers who responded to the domestic violence call which resulted in the seizure of the firearm. The prosecutor asked questions relating to the nature of the call and to domestic violence in general:

Q.      And did at some point did you receive a dispatch call to [the residence at issue] in Clinton Township, Michigan?

A.      Yes, I did.

Q.      What was the nature of the call?

A.      Domestic violence incident.

Q.      What did you do?

A.      I responded to the scene.

* * *

Q.      So you say you were responding to a domestic?

A.      Yes.

Q.      Why are more than one cars called to a scene like that?

A.      Potential for violence.

* * *

Q.      You indicated the dispatch ended, indicated it was a domestic. Was there anything else indicated?

A.      That it was a domestic incident, that there was a previous history of domestic incidents.

Q.      And anything you should be concerned of?

A.      Yes, that it was a previous incidents of –

Q.      Anything concerned of immediate for that day?

-3-

A. There may be weapons involved.

Q. Okay.

A. Potentially.

Q. Could you see anything or just hear?

A. As we walked up we could hear it, but then we kept approaching and as we entered that foyer or the common hallway we could see what was going on.

Q. What did you observe?

A. There was a female that was walking into the hallway and there was items being thrown.

There is no doubt that this portion of Officer Wheeler's testimony was evidence of other "crimes, wrongs, or acts," MRE 404(b)(1); defendant was charged with two firearms offenses, and Officer Wheeler's testimony related only to allegations regarding domestic violence, with which defendant was not charged.

Defense counsel did not object to the testimony, and the trial court made no reference to its earlier grant of defendant's motion, or to the prosecutor's concession that she was withdrawing her notice of intent under MRE 404(b). Rule 404(b) requires, as a prerequisite to admissibility under it, that "[t]he prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence." MRE 404(b)(2). Thus, in addition to the prosecutor's oral statement at the hearing that she would not be offering such evidence, her withdrawal of the notice precluded the introduction of evidence under MRE 404(b).

We are troubled by the prosecution's introduction of such evidence, after the withdrawal of its notice, without flagging the issue for the trial court prior to calling Officer Wheeler as a witness. However, the issue is not entirely clear-cut because defendant's motion was ambiguous as to whether it sought to preclude only the introduction of domestic violence convictions, as Officer Wheeler's testimony did not involve any such convictions, or simply evidence of domestic violence. It is possible that the prosecutor thought such evidence had not been encompassed by the withdrawal of the notice, precisely because Officer Wheeler was not being asked about convictions. We do note, however, that the notice also made reference to evidence which did not relate to convictions, and thus the withdrawal of the notice may have encompassed that evidence as well.

The prosecutor would be well advised in the future to resolve such ambiguities by bringing them to the attention of the trial court for clarification; we take this opportunity to remind all counsel of the responsibility to bring to the trial court's attention previous rulings which may be implicated by issues which arise during a trial.

If we were to find that the prosecutor had violated an express agreement not to offer such evidence at all, we might well overlook defendant's failure to object at the time of Officer Wheeler's testimony, particularly since by withdrawing the notice the prosecutor under such circumstances would have broken an enforceable promise, see MCR 2.507(G), in addition to her having removed a necessary prerequisite to the admission of such evidence. Here, however, defendant also bears some of the blame for the ambiguity of the effect of the agreement and withdrawal of the notice. Defendant's motion was self-contradictory as to whether it sought to bar all evidence regarding domestic incidents or only those resulting in convictions. At the time of Officer Wheeler's testimony, defense counsel failed to object or to argue to the trial court that such evidence had previously been ruled inadmissible by concession of the prosecutor. Thus, under the circumstances presented here, we find that because defense counsel did not object or otherwise draw the trial court's attention to the previous ruling and the prosecutor's agreement, our review must be for plain error affecting substantial rights. See MRE 103(a); *People v Lechleitner*, 291 Mich App 56, 59; 804 NW2d 345 (2010).

To avoid forfeiture under the plain error rule a defendant must prove the following: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error that affected substantial rights is one which affected the outcome of the lower court proceedings. *Id.*

Evidence concerning a defendant's character is inadmissible when offered to prove action in conformity with that character trait. MRE 404(a); *People v Bynum*, 496 Mich 610, 624-625; 852 NW2d 570 (2014). However, evidence of other crimes, wrongs, or acts may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ." MRE 404(b)(1). This list of permissible uses is not exhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). To be admissible under MRE 404(b), other-acts evidence (1) must be offered for a proper purpose, (2) must be relevant under MRE 401, and (3) must not have its probative value substantially outweighed by its potential for unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 55, 60-61; 508 NW2d 114 (1993), amended by 445 Mich 1205 (1994). If the other-acts evidence is admitted, the "trial court, upon request, may provide a limiting instruction" to the jury to lessen the risk of prejudice. *Id.* at 75.

Regarding the first requirement, "[a] proper purpose . . . is one that seeks to accomplish something other than the establishment of a defendant's character and his propensity to commit the offense." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). Consequently, evidence is inadmissible under MRE 404 "if it is relevant solely to the defendant's character or criminal propensity." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010).

And relevant evidence under the second requirement is "evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)." *Sabin*, 463 Mich at 57. However, materiality "does not mean that the evidence must be directed at an element of a crime or an applicable defense." *People v Mills*, 450 Mich 61, 67-

68; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Instead, "[a] material fact is one that is 'in issue' in the sense that it is within the range of litigated matters in controversy." *Sabin*, 463 Mich at 57 (citation and some quotation marks omitted).

When balancing the probative value of evidence of prior bad acts against the danger of unfair prejudice from the evidence under MRE 403, "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Bass*, 317 Mich App 241, 259; 893 NW2d 140 (2016) (quotation marks and citation omitted).

We need not decide whether or not the trial court plainly erred in not sua sponte disallowing Officer Wheeler's testimony because we find that even if the introduction of such testimony was plainly erroneous, defendant has failed to establish that if it had not been admitted, the outcome of the trial would have been different.[1]

The central issue at trial was whether defendant or Cherry was more credible on the issue of why the firearm had been registered in her name. Cherry testified that defendant bought the gun for her as a gift and that she registered the gun in her name because it belonged to her. Defendant, on the other hand, testified that he bought the firearm for himself. Notably, defendant provided a highly confusing reason as to why Cherry put the gun in her name. He stated,

> [I]t's what she wanted to do because as she say, we was together, I was her man, and that's something that she wanted to do to basically try to still keep me with her despite the fact that somebody just a month later [sic—earlier] broke into my car and stole my radio, this was her way of trying to keep me with her. . . . [T]o try to please me.

The prosecutor asked for clarification of how Cherry keeping the gun in her own name would somehow "please" defendant, and defendant responded,

---

[1] The dissent fails to appreciate the significance of the issue not being preserved. Under a plain-error analysis, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Carines*, 460 Mich at 763 (quotation marks and citation omitted). The dissent's citation to *People v Young*, 472 Mich 130, 141-142; 693 NW2d 801 (2005), and *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010), is misplaced because they address *preserved* issues. See *Feezel*, 486 Mich at 192; *Young*, 472 Mich at 141-142. Indeed, *Young* further cautions that "all unpreserved claims of error" are to be reviewed for plain error affecting substantial rights and that "[a]n appellate court must follow the *Grant/Carines* plain-error analysis." *Young*, 472 Mich at 143. As we describe, *infra*, under the circumstances presented here, defendant simply failed to carry his "burden of persuasion with respect to prejudice."

[S]he thought because of the fact to where, well, they broke into my man's car, I, I will do this for him as a way of, I will say, trying to pacify me, basically try to keep me with her.

We find that the questions posed to Officer Wheeler and his responses were unlikely to have caused the jury to resolve the credibility determination one way or the other. Although the prosecutor sought to insinuate, improperly in our opinion, that Officer Wheeler and other responding officers were endangered by defendant, we find that testimony not overly prejudicial in light of the fact that Officer Wheeler seized a firearm from defendant's actual or constructive possession, evidence which was properly before the jury. Further, Officer Wheeler never described witnessing any violent or assaultive behavior on defendant's behalf. Instead, he stated that when he was walking up to Isby's apartment building, he heard "yelling and screaming going on." And after entering the common hallway, he saw Isby "walking into the hallway and there was [sic] items being thrown." Notably, Officer Wheeler never clarified whom he saw throwing the items, and he only identified Isby as the one "yelling." Indeed, in relaying what he saw, Officer Wheeler merely described defendant as "standing" near an open door. Therefore, the jury simply was presented with vague testimony that defendant had been involved in prior domestic "incidents," and there was no evidence that defendant actually had engaged in any assaultive behavior at the time Officer Wheeler responded to the dispatch call. Thus, it is far from clear that this testimony would have somehow influenced the jury to convict when it otherwise would not have.[2] In addition, the prosecution did not argue to the jury that it should consider such evidence in weighing defendant's and Cherry's credibility. The prosecutor mentioned the testimony about a "domestic" call to the police only once in closing argument, and then only to explain what led Officer Wheeler to seize the firearm, which was entirely proper; the prosecutor did not mention Officer Wheeler's testimony in that regard at all in rebuttal. Under these circumstances, and given defendant's own explanation for Cherry's purported reasons for titling the firearm in her own name, which was confusing at best and implausible at worst, we decline to reverse defendant's conviction on the basis of this evidence.

Ultimately, the issue as to who owned the gun boiled down to whether the jury believed Cherry or defendant—a question of fact reserved for the jury. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). And here, the jury found Cherry credible. Simply put, defendant has failed to show how defendant's past instances of domestic "incidents" influenced

---

[2] While the dissent claims that five pages of transcripts were dedicated to the prosecution cross-examining defendant regarding "the events at the domestic incident," we think this is a mischaracterization. The questioning undoubtedly was related to what happened at Isby's house, but the prosecutor did not describe it as a "domestic incident"—it was defendant who said that the police had assumed there was a "domestic" incident. Moreover, nothing introduced during this cross-examination went to other-acts evidence, let alone instances of domestic violence, because defendant did not admit to any such conduct. At worst, defendant admitted that he and Isby had been "debat[ing]" before the police arrived. As such, we fail to see the significance of this testimony, when the challenged testimony before us was that of Officer Wheeler.

the jury's ability to determine credibility.  Therefore, defendant cannot establish that any plain error, if it existed, affected his substantial rights.

Affirmed.

/s/ Jonathan Tukel
/s/ Michael F. Gadola